W. J. BAKER ET AL. v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS ET AL.

Decided July 3, 1909.

**1.—Practice—Charge—Ordinary Care.**

In a suit for damages to a shipment of cattle the trial court defined negligence to be a failure on the part of the defendant carrier to use ordinary care in handling plaintiff's cattle. Held, in the absence of a requested charge defining ordinary care, the charge was sufficient.

**2.—Action against Carrier—Burden of Proof.**

When a carrier receives for transportation, property which is shown to be

in good condition at that time, and which is never delivered at destination or delivered in a damaged condition and no caretaker accompanies the property, the burden of proof is on the carrier to show that such failure or condition was not due to its negligence; this burden, however, is discharged by evidence which tends to explain the failure or condition, and the burden of proof on the whole case is on the plaintiff.

### 3.—Same—Diseased Cattle—Evidence.

In an action against carriers for the death of some of the cattle and injury to others during transportation, evidence as to a diseased condition of the cattle when received by the carriers, considered and held sufficient to support a verdict for the defendants.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*Templeton & Agerton*, for appellants.—Under the pleadings and the evidence the Missouri, Kansas & Texas Railway Company of Texas, being the initial carrier which received the cattle and which issued therefor a bill of lading or stock contract on which they were carried, was liable to plaintiffs for any damages to said cattle which was occasioned by the negligence of its co-defendant, and the trial court erred in directing a verdict for said M., K. & T. Ry. Co. of Texas. Southern Pacific Ry. Co. v. Pruitt, 90 S. W., 692; Texas & Pacific Ry. Co. v. McCarty, 29 Texas Civ. App., 616; Texas & Pacific Ry. Co. v. Andrews, 80 S. W., 390; Texas & Pacific Ry. Co. v. Randle, 44 S. W., 604; Texas Cent. Ry. Co. v. Miller, 88 S. W., 501; Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264; U. S. Rev. Stats., chap. 3591, sec. 20, amended by Act of June 20, 1906; Ogdensburg & L. C. Ry. Co. v. Pratt, 22 Wal., 123; 22 L. Ed., 827.

In the absence of proof that the initial carrier received and carried said cattle under a contract limiting its liability for damage thereto to such damage as occurred on its own line, it was error for the court to instruct a verdict for said defendant. Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264; Southern Pac. Ry. Co. v. Pruitt, 90 S. W., 692.

The authority given by the plaintiffs to the defendants to observe the 36-hour limit as to unloading, feeding and watering plaintiffs' cattle while in transit, did not relieve the defendants from the duty of exercising ordinary care to look after said cattle and to observe from time to time their condition while in transit, and to unload and feed and water them whenever it became necessary so to do, in order to avoid injuring them, and the court erred in refusing to instruct the jury as requested. Missouri Pac. Co. v. Ivey, 79 Texas, 446; U. S. Rev. Stats., sec. 1, Act of June 29, 1906.

In the absence of a shipper going with the cattle, it became and was the duty of the defendants while carrying said cattle to look after and to observe same from time to time, and to exercise ordinary care to ascertain their condition, and to unload and feed and water them whenever it became necessary to do so, in order to prevent injury to them from want of water, feed or rest. The carriers were not relieved of such duty by the authority given them by the shippers to observe the 36-hour limit as to unloading, feeding and watering said cattle while in transit, and the failure of the defendants to discharge this

duty was such negligence as will render them liable to plaintiffs for the damages resulting therefrom. Missouri Pac. Ry. Co. v. Ivey, 79 Texas, 446; Texas & P. Ry. Co. v. Slaughter, 84 S. W., 1086.

The burden of proof is on the party who best knows a given fact or state of facts to prove same, and upon the failure so to do the presumption as to such fact or facts will be against such party. Pullman Co. v. Nelson, 54 S. W., 625; Welsh v. Morris, 81 Texas, 159-162; Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 20; 1 Jones on Evidence, sec. 17; 1 Wigmore on Evi., secs. 285 to 289.

Where a common carrier receives for transportation over its lines of railway property of a shipper, which is in good condition when it is delivered into the carrier's custody, and which is not delivered at its destination, or which, when so delivered, is injured and damaged, and where it is shown that no care-taker or shipper accompanies the property, and that same was in the exclusive possession and under the control of the carrier while in transit, the burden of proof is on the carrier to excuse its failure to deliver the property at its destination, and to show that such failure was not due to its negligence. Or, if the property has been delivered at its destination in an injured and damaged condition, the burden of proof is on the carrier making such delivery to show or explain how such injury and damage occurred and that same was not due to its negligence. In such cases it is error for the court to charge the jury that the burden of proof is on the plaintiffs to make out their case by a preponderance of the evidence "that the defendants are liable." Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 19 and 20; Gulf, C. & S. F. Ry. Co. v. Cushney, 67 S. W., 77 and 78; Missouri, K. & T. Ry. Co. v. Mazzie, 68 S. W., 56; Missouri Pac. Ry. Co. v. Scott, 26 S. W., 240; Southern Pac. Ry. Co. v. Phillipson, 39 S. W., 959; Galveston, H. & S. A. Ry. Co. v. Horne, 69 Texas, 488; Gulf, C. & S. F. Ry. Co. v. Edloff, 34 S. W., 413 and 414; Texas & N. O. Ry. Co. v. Gray, 99 S. W., 1126; St. Louis & S. F. Ry. Co. v. Byers Bros., 90 S. W., 720; Texas & P. Ry. Co. v. Coggin, 90 S. W., 523; Cincinnati, N. O. & T. P. Ry. Co. v. Greening, 100 S. W., 826 and 828; Ft. Worth & D. C. Ry. Co. v. Shanley, 81 S. W., 1014.

If plaintiffs' cattle were injured or died from any inherent vice therein, the burden was on the defendant in charge of said cattle at the time of their death to prove such fact.

*Spoonts, Thompson & Barwise,* for appellees.

SPEER, ASSOCIATE JUSTICE.—W. J. Baker and Percy Webb sued the Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company to recover nine hundred and eighty-eight dollars and seventy-five cents as damages to a shipment of cattle shipped from Hodge, Texas, to East St. Louis, Illinois, over the lines of the two defendants. The trial resulted in a verdict and judgment for the defendants and the plaintiff's have appealed.

The following statement by appellants illustrates the issues to be decided:

"The cattle in question were placed in the shipping pens of defendants at Hodge, about 10 or 11 o'clock on the morning of the 18th of January, 1907. They remained in the pens provided by defendants at that place until about two o'clock in the afternoon of the same day, when they were loaded on to four cars by the agents of the defendants and started to their destination over defendants' line of railway. According to uncontradicted testimony of defendants' train conductors, the cattle reached Denison, the first division point, at 8:45 p. m. on January 18th; they left Denison at 9:40 p. m. same date, and reached Muskogee, Okla., next division point, at 5:30 a. m. on January 19th; they left Muskogee, Okla., at 7 a. m. on the 19th, and reached Parsons, Kansas, at 12:40 p. m. of same day; they left Parsons, Kansas, at 2:20 p. m. January 19th, and reached Sedalia, Mo., the next division point, at 12:40 a. m. on January 20, 1907. The cattle were not unloaded to be fed, watered or rested at any time during their transit from the time they were loaded at Hodge, Texas, until they reached Sedalia, Mo. When they reached Sedalia they were in bad condition; sixteen head were down in the cars, one of these was dead, and the other fifteen head staggered and were unable to stand up, and died in a few hours after being dragged from the cars. The remaining eighty-three head were weak and staggering, but when unloaded and given an opportunity they drank water freely. They were given feed, water and rest at Sedalia, and at 5:30 p. m. on January 20, were reloaded on to the cars and started on to East St. Louis; they reached Franklin Junction, the next division point, at 8:10 p. m. same date; they left Franklin Junction at 8:55 p. m. same day, and reached North St. Louis at 10:35 a. m. on January 21, 1907. Said cattle were delivered to Stock Yards Company at East St. Louis at 12:25 p. m. January 21st; they were delivered to Bright Coy Commission Company, the consignees, at 1 p. m. of said date, and were sold by said company between two and three o'clock same afternoon. The eighty-three head of cattle weighed 71,800 pounds and sold for $4.25 per hundredweight, the prevailing market price.

"The uncontroverted evidence showed that no care-taker or shipper went with the cattle, and they were in the exclusive possession and control of defendants from the time they were placed in the shipping pens at Hodge until the eighty-three head were delivered into the pens at East St. Louis. At the time the cattle were delivered to defendants at Hodge a written permit was given allowing the carriers to observe the 36-hour limit as to unloading, watering, feeding and resting them. The cattle prior to shipment had been fed and fattened on cotton-seed meal and hulls, and were plentifully supplied with water at all hours up to the time they were taken out of the feed pens and put into the shipping pens at Hodge on January 18th, after which time they were not watered until after their arrival at Sedalia. An autopsy on one of the dead cattle was held at Sedalia, which disclosed the following condition, viz.: The paunch or first stomach was about two-thirds full of undigested cotton-seed meal and hulls, and nothing else; the second stomach was about one-fourth full of cotton-seed meal and hulls, and nothing else; the third stomach was so packed with cotton-seed meal and hulls between its many leaves that it was im-

possible for its contents to be passed on to the fourth stomach; the fourth, or true digestive stomach, was entirely empty. An examination was had on the other dead cattle by the party disposing of their carcasses, which revealed the fact that all the sixteen head of cattle were affected alike. They were cut into, and their stomachs were found to be packed with dry cotton-seed meal and hulls, so hard that it could not be cut with a knife, and perfectly dry; their stomachs had shrunk over this dry, hard substance until they were only about one-fourth their natural size.

"The controverted issues are in regard to the cause or causes of the death of the sixteen head of cattle, and the delay in delivery of the others at East St. Louis. The plaintiffs contend that the sixteen head of cattle which were dead when they reached Sedalia and which died shortly thereafter, all died from a lack of water while in transit, and that defendants knew, or should have known by the exercise of an ordinary degree of care, the condition of said cattle in time to have prevented said injury; and that the eighty-three head of cattle which were delivered at East St. Louis were delayed in transit by the negligence of defendants. The defendants answered that the death of the sixteen head of cattle was due to the manner in which they had been fed prior to shipping same, and that this method of feeding caused nitrogenous poison to set up, which brought about their death, and that there was no delay in the delivery of the remaining eighty-three head."

To this statement might be added the testimony of the veterinary surgeons, which would support the implied finding of the jury that the cattle were afflicted with nitrogen poisoning produced by improper feeding.

In the first paragraph of the court's charge he defined negligence to be a failure upon the part of the defendants to use ordinary care in handling appellants' cattle. There was no request for a charge defining ordinary care, and the first assignment is therefore overruled.

The statement of the case already set out indicates that there was evidence that the inherent condition of the cattle produced the injury which resulted in their death, and there was therefore no error in presenting this phase of appellees' defense.

The ruling of the court in giving a peremptory instruction to find for the appellee Missouri, Kansas & Texas Railway Company of Texas becomes immaterial in view of our conclusions as to the non-liability of its co-appellee, the Missouri, Kansas & Texas Railway Company.

Appellants' special charges numbers one, two and three were properly refused, because the whole charge as given to the jury assumed that it was appellees' duty to exercise ordinary care to handle, care for and water appellants' cattle, regardless of the giving of the notice to observe the 36-hour limit.

Complaint is made by appellants that the burden of proof was placed on them to make out their case by a preponderance of the evidence, the insistence being that where, as here, a common carrier receives for transportation property which is shown to be in good condition when delivered to the carrier, and which is not delivered at destination or which, when delivered, is in a damaged condition, and no care-taker

or shipper accompanies the property, the burden of proof is on the carrier to show that such failure or condition was not due to its negligence. This is abstractly correct, and many authorities might be cited to support the proposition, and in a proper case—that is, where no explanation whatever is offered by the carrier—the court might perhaps instruct the jury that the burden of proof was on the defendant, or possibly that the company was absolutely liable; but in the present case the defendants have not only offered evidence which tended to explain the cause of the death of appellants' cattle, but which did satisfy the minds of the jurors that the defendants were not guilty of negligence. Certainly, in such a case it is not error to charge that the burden of proof on the whole case was on plaintiffs. See Ft. Worth & D. C. Ry. Co. v. Day, 50 Texas Civ. App., 407.

Appellants' criticism of special charge number seven asked by appellees and given by the court is unjust, because it is therein required that the defendants must have handled the cattle with ordinary care and prudence before they would be excused from liability for such shrinkage and stale appearance as is usually or customarily incident to shipments of cattle when handled the length of trip these were handled.

The ruling of the court with respect to the testimony of the witnesses Cassidy and Bright as to the value of the cattle in East St. Louis becomes immaterial in view of the verdict and judgment against liability.

We find no error in the record and the judgment is affirmed.

*Affirmed.*